**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KURELL BROWN,

Plaintiff,

v.

No. 11-CV-1298
(DNH/CFH)

R. W. DREYFUS; NORMAN BEZIO,

Defendants.[1]

| APPEARANCES: | OF COUNSEL: |
|---|---|

KURELL BROWN
Plaintiff Pro Se
06-A-1186
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN
Attorney General for the
 State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

MICHAEL G. McCARTIN, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Kurell Brown ("Brown"), an inmate currently in the custody of the New

York State Department of Correctional and Community Supervision ("DOCCS"), brings this

---

[1] "Dreyfus" is signed and spelled "Drefus" in a disciplinary hearing disposition submitted to the Court. Dkt. No. 56-4 at 22. The Court uses the latter spelling for this Report-Recommendation.

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

action pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCCS employees, violated his constitutional rights under the Fourteenth Amendment. Am. Compl. (Dkt. No. 30).[3] Presently pending is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 56. Brown opposes the motion. Dkt. Nos. 60, 66, 67. For the reasons which follow, it is recommended that defendant's motion be granted.

## I. Background[4]

The facts are related herein in the light most favorable to Brown as the non-moving party. See subsection II(A) infra.

After his arrival at the Upstate Correctional Facility ("Upstate") as an inmate on January 9, 2009, Brown was randomly tested for the use of controlled substances on February 25, April 3, and April 20, 2009. Brown Dep. (Dkt. No. 56-3) at 16:6–12;[5] see Dkt. No. 56-4 at 3. On February 24, 2009, non-party Officer Gary witnessed the taking of Brown's urine

---

[3] By letter dated September 14, 2012, non-party Deputy Counsel William M. Gonzalez of DOCCS informed the Court that mail sent to Drefus at Drefus's last known address, informing him of this present lawsuit, was returned as "not deliverable as addressed." Dkt. No. 48. DOCCS does not have another address for Drefus. Id. To date, service has not been effected on defendant R. W. Drefus.
   Where a defendant has not been served with process within 120 days of the filing of the complaint, the complaint must be dismissed without prejudice as to that defendant or the court must order "service be made within a specified time." FED. R. CIV. P. 4(m). Here, more than 120 days have passed since Brown filed his complaint. Accordingly, any and all claims alleged against Drefus should be dismissed.

[4] Generally, "[a] party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." N.D.N.Y.L.R. 7.1(a)(4). Brown referenced four exhibits in his amended complaint that clearly refer to the exhibits attached to his original complaint. This Court considers his amended complaint as including those original exhibits.

[5] The page numbers following "Brown Dep." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

sample.  Dkt. No. 56-4 at 9.  On February 25, 2009 at 7:00 a.m., non-party Officer Wood

removed Brown's urinalysis sample from the refrigerator for thawing and tested it at 10:18

a.m. and 11:52 a.m, both tests came out positive for marijuana use.  Id. at 5–6, 41–42.  On

February 26, 2009, Brown was issued a misbehavior report for using a controlled substance

in violation of DOCCS Rule 113.24.  Am. Compl. at 7; Dkt. Nos. 1 at 16, 56-4 at 9, 11.

On March 11, 2009, Drefus conducted a disciplinary hearing concerning the February

26, 2009 misbehavior report.  Dkt. Nos. 56-3, 56-4 at 13.  During the hearing, Brown

alleged that non-party Officer Dame failed to provide him with adequate assistance in

building his defense.  Dkt. No. 56-4 at 16, 18, 35–36.  Brown contended that non-party

Officer Ashlaw witnessed the taking of the urinalysis sample, not Gary.  Id. at 28.  Brown

further contended that Wood actually tested his urinalysis sample at 7:00 a.m. on February

25, 2009; thus, his sample was tested three times.  Id. at 30.  Brown reasoned that since

DOCCS rules provide that a sample which tested negative should be thrown out, while a

sample which tested positive should be re-tested, his sample first tested negative but then

positive for the second and third times.  Id.  Brown essentially argued that his urinalysis

sample should have been thrown out because it tested negative the first time; thus, the

misbehavior report should not have been issued.  Id.  The hearing was adjourned to

conduct further investigation on the chain of custody of Brown's urinalysis sample.  Id. at

13, 38–39.

On March 17, 2009, the disciplinary hearing resumed.  Dkt. No. 56-4 at 39; see id. at 13,

20.  Drefus stated that Brown was provided the following requested information:  (1)

DOCCS Directives #4932 and #4938; (2) "a written application from Albany for a random

test on 2/16/09"; (3) a video request; (4) and the temperature of the room of the refrigerator

3

holding the urinalysis sample and the refrigerator itself.  Id. at 39–40.  Nevertheless, Brown

alleged that Drefus (1) was biased; (2) denied him an opportunity to obtain witness

testimonies; and (3) failed to investigate his claim involving the chain of custody of his

urinalysis sample.  Am. Compl. at 7.  Further, Brown contends that Drefus retaliated against

him for defending the case by imposing a severe sentence.  Id. at 7.[6]  At the end of the

hearing, Drefus sentenced Brown to 360 days in the Special Housing Unit ("SHU")[7] and loss

of packages, commissary, phone privileges, and good time credits.[8]  Am. Compl. at 7; Dkt.

---

[6]  To the extent that Brown was attempting to allege a potential First Amendment
retaliation claim against Drefus, such a claim must fail.  To state an actionable claim for
retaliation under the First Amendment, a prisoner must establish by a preponderance of
the evidence that:  (1) the speech or conduct at issue was protected; (2) the defendant
took adverse action against the plaintiff; and (3) there was a causal connection between
the protected speech and the adverse action.  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d
Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp.
2d 317, 347 (N.D.N.Y. 2010).  Here, the right to present a defense is protected conduct.
Taylor v. Illinois, 484 U.S. 400, 409 (1988) (citation omitted).  Further, the imposition of
SHU housing would objectively deter a similarly situated individual of ordinary firmness
from exercising constitutional rights.  Gill, 389 F.3d at 383 (noting that keeplock, a lesser
form of SHU, constitutes adverse action).  However, Brown alleged no causal evidence
and there is nothing in the record reflecting otherwise.  Id. at 380.  Therefore, despite
Brown's conclusory allegations, his potential retaliation claim must fail as a matter of law.
 Additionally, Brown testified that Wood told him he would always be tested positive
for drug use.  Brown Dep. at 25.  However, Brown does not allege any additional facts
showing what protected activity he was engaged in that caused adverse action to be
carried out by Wood.  Gill, 389 F.3d at 380.  Thus, to the extent that Brown attempted to
allege a retaliation claim against Wood, such a claim must also fail.

[7]  SHUs exist in all maximum and certain medium security facilities.  The units
"consist of single-occupancy cells grouped so as to provide separation from the general
population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a
SHU as discipline, pending resolution of misconduct charges, for administrative or security
reasons, or in other circumstances as required.  Id. at pt. 301.

[8]  Brown attached to his amended complaint a computer print-out of his disciplinary
history.  Dkt. No. 30 at 14.  The document concerns an April 3, 2009 incident, which
resulted in a conviction and sentence of five months in SHU and six months loss of
package, commissary, phone privileges, and good time credits.  Id.  There is nothing in the
document surrounding the February 25, 2009 incident.

4

No. 56-4 at 20, 22.  Housing in SHU was to run from July 29, 2011 through July 23, 2012.

Dkt. No. 56-4 at 20.

On May 12, 2009, Brown was denied supervised parole release due to the issuance of

the misbehavior report.[9]  Id.; see also Dkt. No. 1 at 11–12.[10]  On the same day, upon

receiving Brown's appeal of Drefus's decision, defendant Bezio, director of special

housing/inmate disciplinary program, reduced Brown's SHU and loss of good time credits

penalties to 180 days, reasoning that "[t]he penalty imposed exceeds the departmental

guidelines for the second offense of this type of misconduct."  Dkt. No. 56-4 at 59–60.

Brown commenced an Article 78 proceeding to appeal that disposition.[11]  Am. Compl. at 13;

see Dkt. No. 56-4 at 65–66.

On June 1, 2010, DOCCS administratively reversed and expunged the March 17, 2009

conviction pursuant to a conversation with the Office of the Attorney General.  Dkt. No. 56-4

at 62–63.

On October 7, 2010, the New York Appellate Division, Third Department, dismissed

Brown's petition as moot because the March 17, 2009 conviction was administratively

reversed and expunged from Brown's institutional record; thus, "[Brown] received all the

---

[9]  To the extent that Brown challenges the denial of parole, such a claim is better suited in a writ of habeas corpus petition.  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody").

[10]  Brown was denied parole based on his conviction of a gunpoint robbery of a taxicab driver and poor institutional behavior, including the misbehavior report issued for drug use.  Dkt. No. 1 at 12.

[11]  N.Y. Civil Practice Law and Rules Art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

relief to which he is entitled." Brown v. Fischer, 77 A.D.3d 1003, 1005 (3d Dep't 1004); Dkt.

Nos. 30 at 13, 56-4 at 65–66.  On October 25, 2011, Brown filed the original complaint to

this action.  Dkt. No. 1.

In his response to defendant's summary judgment motion dated November 26, 2012,

Brown contends that this lawsuit involves not only the February 25, 2009 urinalysis but all

urinalyses at Upstate.  Dkt. No. 60 at 2.  For example, on April 21, 2009, Brown filed a

complaint, stating that he was targeted and harassed in violation of Directive #4937

because he had two random urine tests within three days.  Dkt. No. 1 at 20.  This complaint

follows the issuance of a misbehavior report dated April 3, 2009 for use of controlled

substance.  Id. at 22.  Brown asserts additional claims in his response of:  (1) continued

harassment at Upstate, presumably with random drug testing as retaliation for his assault

charges or his recent transfer from another correctional facility over allegations of

corruption; (2) being part of a class group affected by the same type of harassment; (3) a

class action suit; and (4) violations of his constitutional rights under the First, Fourth, Sixth,

Eighth, and Fourteenth Amendments.  Dkt. No. 60 at 10–11.  In his supplemental

responses, Brown again alleged that the harassment is continuous, for example, he was

given another random drug test on December 12, 2012.[12]  Dkt. No. 66 at 1.

_____

[12]  Brown failed to establish a potential retaliation claim based on allegations of
continued harassment.  As previously delineated, to state an actionable claim for
retaliation under the First Amendment, a prisoner must establish by a preponderance of
the evidence that:  (1) he was engaged in protected conduct; (2) defendants took adverse
action against him; and (3) establish a causal connection between the protected conduct
and adverse action.  Gill, 389 F.3d at 380 (internal quotation marks and citation omitted).
Here, Brown alleged he was retaliated against for the protected conduct of filing
complaints and lawsuits.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).  However,
"[u]rine tests are a fact of prison life."  Bumpus v. Canfield, 495 F. Supp. 2d 316, 327
(W.D.N.Y. 2007).  Having three urine tests ordered in three days has been found to not
constitute adverse action.  Partak v. Behrle, No. 09-CV-1256 (FJS/ATB), 2011 WL

6

## II. Discussion

Brown asserts that Bezio violated his due process rights.[13]  Bezio contends that Brown

---

7629500, at *14 (N.D.N.Y. Sept. 12, 2011) (attached to this Report-Recommendation).  It follows that here, the three tests ordered within fifty-four days between February 25 and April 20 of 2009, as well as the test conducted more than three years later on December 12, 2012, do not amount to adverse action.  Further, Brown failed to establish a causal connection as there is no record evidence showing that either defendant ordered the urinalysis tests.  Bumpus, 495 F. Supp. 2d at 327.  Thus, such potential retaliation claims must fail.

   As for the remaining claims in his responses, Brown only made them in a conclusory fashion without substantiation.  "Conclusory allegations or unsubstantiated speculation" may not be relied upon.  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).  The non-movant "must offer some hard evidence showing that its version of the events is not wholly fanciful."  Id. (citing D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)) (internal quotation marks omitted).  Based on Brown's conclusory allegations, no reasonable factfinder could find in his favor.  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994); see subsection II(A) infra. Therefore, such potential claims must also fail.

   [13]  Liberally construing the complaint, Brown raised an Eighth Amendment claim to be free from cruel and unusual punishment against random urinalysis.  Rodriguez v. Coughlin, 795 F. Supp. 609, 613 (W.D.N.Y. 1992).  "To be cruel and unusual punishment, conduct . . . must involve more than ordinary lack of due care for the prisoner's interests or safety . . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Eighth Amendment."  Kingsley v. Bureau of Prisons, 937 F.2d 26, 31–32 (2d Cir. 1991) (alteration and citation omitted).  "Random urinalysis seeks to secure a safer prison environment, so it is difficult to see how [that] . . . constitutes a lack of due care for the prisoner's interests of safety[; therefore,] . . . urinalysis testing, . . . conducted in accordance with established guidelines, cannot be said to constitute obduracy and wantonness."  Rodriguez, 795 F. Supp. at 613 (internal quotation marks and citations omitted).  In this case, the record is devoid of any indication that Bezio, or any other DOCCS employees, failed to comply with DOCCS regulations concerning urine testing.  As such, there is no evidence to support Brown's Eighth Amendment claim.
   Additionally, random urinalysis of an inmate constitutes an illegal search under the Fourth Amendment if it was done to harass.  See Skinner v. Railway Labor Execs.' Ass'n, 489 U.S. 602, 614 (1989).  However, the Fourth Amendment does not prevent random urinalysis done in a reasonable manner.  Holmes v. Fischer, 764 F. Supp. 2d 523, 536 (W.D.N.Y. 2011) (citing Storms v. Coughlin, 600 F. Supp. 1214, 1221 (S.D.N.Y. 1984)).  Here, record evidence yet again does not show any connection between the February 25, 2009 urinalysis and harassment to Brown.  Despite Brown's conclusory allegations that he was harassed for committing an assault violation and complaining about corruption among DOCCS staff, there is nothing in the record supporting such claims.  Therefore, Brown's

was afforded all the process that was due and the complaint should be dismissed.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial.  The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

---

potential Fourth Amendment claim must also fail.

8

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to "special solicitude," . . . that a pro se litigant's
> submissions must be construed "liberally,". . . and that such
> submissions must be read to raise the strongest arguments that
> they "suggest," . . . . At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not "consistent" with the pro se litigant's allegations, . . .
> or arguments that the submissions themselves do not "suggest,"
> . . . that we should not "excuse frivolous or vexatious filings by
> pro se litigants," . . . and that pro se status "does not exempt a
> party from compliance with relevant rules of procedural and
> substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537

F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded

district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his

pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported motion;

the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at

247–48.


### B. Due Process

Brown specifically alleges that he was denied due process because Drefus failed to

serve as an impartial hearing officer, deprived him of an opportunity to obtain testimony

evidence, and failed to investigate the chain of custody of his urinalysis sample.

While inmates are not given "the full panoply of [due process] rights," they are still

afforded procedural process.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  As a

threshold matter, an inmate asserting a violation of his or her right to due process must

establish the existence of a protected interest in life, liberty, or property.  See Perry v.

McDonald, 280 F.3d 159, 173 (2d Cir. 2001).  To establish a protected liberty interest, a

prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483–84 (1995). After a protected liberty interest has been established, the Court asks "whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citation omitted).

### 1. Liberty Interest

The standard for establishing a protected liberty interest requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Sandin, 515 U.S. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). The fact that an inmate has been disciplined with segregated confinement alone is insufficient to establish an atypical and significant deprivation. The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998).

While not a dispositive factor, the duration of a disciplinary confinement is a significant factor in determining atypicality. Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted). The Second Circuit has not established "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citations omitted). Instead, the Second Circuit has provided guidelines that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required." Id. at 64–65 (citing Colon,

215 F.3d at 232). In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law." Id. at 65 (citations omitted). Conversely, where an inmate is confined under normal SHU conditions for a duration in excess of an intermediate disposition, the length of the confinement itself is sufficient to establish atypicality. Id. (citing Colon, 215 F.3d at 231–32).

Because Brown asserted a due process claim, he must make a threshold showing of an atypical and significant hardship. Here, Brown was sentenced to 180 days of SHU and loss of good time credits as well as 360 days loss of packages, commissary, and phone privileges. However, record evidence shows that Brown was never submitted to these penalties.[14] The disposition containing these punishments was administratively reversed on June 1, 2010, which was prior to the date that SHU confinement was slated to begin for the February 25, 2009 incident. Thus, it cannot be said that Brown suffered from an atypical and significant deprivation in relation to ordinary prison life.

Accordingly, Bezio's motion on this ground should be granted.

## 2. Adequate Procedural Due Process

Brown has also failed to establish the second part of a due process claim because he was ultimately afforded his due process protections. A disciplinary hearing was held on the February 26, 2009 misbehavior report. Brown appealed that hearing disposition, which was affirmed. Brown then filed an Article 78 petition challenging the disciplinary disposition. "An Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due

---

[14] While Brown was in SHU, it was for prior disciplinary infractions. Brown Dep. at 56:22–57:7; Dkt. No. 56-4 at 20.

process purposes" for it "permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." Clark v. DiNapoli, No. 09-CV-1037, 2011 WL 4901330 (N.D.N.Y. Oct. 14, 2011) (Dkt. No. 56-7) at *11 (internal quotation marks omitted) (citing Locurto v. Safir, 264 F.3d 154, 174–75 (2d Cir. 2001)); see also Dawes v. Coughlin, 964 F. Supp. 652, 658 (N.D.N.Y. 1997) ("[T]he fact that an inmate has a judicial remedy to challenge [disciplinary hearing dispositions], under CPLR article 78 clearly provide due process of law."). Because Brown availed himself of an Article 78 proceeding, Brown is precluded from challenging the process he received during the hearing.

Further, as previously discussed, Brown's conviction for violating a prison rule was administratively reversed. This "reversal constituted part of the due process protection [that Brown] received, and it cured any procedural defect that may have occurred." Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992), cert. denied, 510 U.S. 837 (1993) (citation omitted). Moreover, the reversal took place on June 1, 2010, which is prior to both the dismissal of Brown's Article 78 petition on October 7, 2010 and when Brown was to serve the SHU sentence on July 29, 2011. As previously stated, there is no record evidence indicating that Brown was submitted to any of the 180 days in SHU or the remaining penalties. Thus, since "[Brown] was never penalized on the [use of controlled substance charge,] . . . he suffered no interference with a liberty interest and has no valid claim for relief." Young, 970 F.2d at 1156 (citation omitted); see also Sims v. Goord, No. 03-CV-1099 (LEK/RFT), 2007 WL 952071 (N.D.N.Y. Mar. 29, 2007) (Dkt. No. 56-7) at *14 (collecting cases). As such, Brown's due process claim should be dismissed.

Accordingly, Bezio's motion on this ground should be granted.

12

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 56) be **GRANTED** and Brown's amended complaint (Dkt. No. 30) be **DISMISSED** with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: April 30, 2013
       Albany, New York


Christian F. Hummel
U.S. Magistrate Judge